James R. Noblin (SBN 114442)
**GREEN & NOBLIN, P.C.**
4500 East Pacific Coast Highway
Fourth Floor
Long Beach, California 90804
Telephone: (562) 391-2487
Facsimile: (415) 477-6710
Email: gnecf@classcounsel.com

*Counsel for Plaintiff*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER ALAMILLO, individually and on behalf of all others similarly situated, | Case No.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| vs. | |
| BRINKER INTERNATIONAL, INC., a Texas Corporation, | |
| Defendant. | |

CLASS ACTION COMPLAINT

Plaintiff  Peter Alamillo ("Plaintiff" or "Alamillo"), individually and on behalf of the Classes defined below, allege the following against Brinker International, Inc., a Texas corporation, ("Brinker") based upon personal knowledge and on information and belief derived in part from investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE CASE

1.    Plaintiff brings this class action case against Brinker for its failure to secure and safeguard consumers' personally identifiable information ("PII") which Brinker collected from various sources in connection with the operation of Chili's restaurants owned and operated by Brinker.

2.    Brinker has acknowledged that a cybersecurity incident (the "Data Breach") occurred, resulting in the theft of its customers' PII, mainly consisting of payment card numbers and other information sufficient for wrongdoers to make fraudulent charges to Brinker customers' accounts.

3.    The PII for Plaintiff and the class of consumers he seeks to represent was compromised due to Brinker's acts and omissions and their failure to protect the PII properly.

4.    Brinker could have prevented this Data Breach. Data breaches at other chain restaurants, such as Jason's Deli, Wendy's, Jimmy Johns, Arby's, and Sonic, have occurred, putting Brinker on notice of the need to protect its customers' PII.

5.    Brinker disregarded the rights of  Plaintiff and Class members by intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected, failing to disclose to its customers the material fact that it did not have adequate computer systems and security practices to safeguard PII, failing to take available steps to prevent and stop the breach from ever happening, and failing to monitor and detect the breach on a timely basis.

CLASS ACTION COMPLAINT

6.    As a result of the Data Breach, the PII of the Plaintiff and Class members has been exposed to criminals for misuse. The injuries suffered, and likely to be suffered, by  Plaintiff and Class members as a direct result of the Data Breach include:

    a.    unauthorized use and exposure of their PII;

    b.    theft of their personal and financial information;

    c.    costs and time associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

    d.    damages arising from the inability to use their PII;

    e.    loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including decreased credit scores and adverse credit notations;

    f.    costs associated with time spent and the loss of productivity or the enjoyment of life from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, purchasing credit monitoring and identity theft protection services, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

    g.    the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their PII being placed in the hands of criminals and that has already been misused via the sale of  Plaintiff's and Class members' information on the Internet black market;

    h.    damages to and diminution in value of their PII entrusted to Brinker for the sole purpose of purchasing products and services from Brinker; and

CLASS ACTION COMPLAINT

i.      the loss of Plaintiff's and Class members' privacy.

7.      The injuries to Plaintiff and Class members were caused directly and proximately by Brinker's failure to implement or maintain adequate data security measures for PII.

8.      Further,  Plaintiff retains a significant interest in ensuring that his PII, which, while stolen, remains in the possession of Brinker, is protected from further breaches, and seeks to remedy the harms he, and similarly situated consumers whose PII was stolen as a result of the Data Breach, have suffered.

9.      Plaintiff brings this action to remedy these harms on behalf of himself and all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiff seeks the following remedies, among others: statutory damages under state and/or federal laws, reimbursement of out-of-pocket losses, other compensatory damages, further and more robust credit monitoring services with accompanying identity theft insurance, and injunctive relief including an order requiring Brinker to implement improved data security measures.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative class members. And, at least some members of the proposed Class have a different citizenship from Brinker.

11.      This Court has jurisdiction over Brinker because it transacts business in this state, has purposely availed itself of the laws of this state, and because a substantial part of the events giving rise to Plaintiff's causes of action occurred in this state. In addition, Plaintiff resides in this district. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

CLASS ACTION COMPLAINT

# **PARTIES**

12.     Plaintiff Peter Alamillo is a resident of Whittier, California. On April 6, 2018, Plaintiff visited a Chili's restaurant location in Palmdale, California with his family and paid with his debit card. He is a victim of the Data Breach. On May 21, 2018, Plaintiff received an email from chilisemailsupport@email.chilis.com informing him of the Data Breach (the "Notice"). This notice stated, in relevant part:

> On May 11, 2018, we learned that some of our Guests' payment card information was compromised from certain Chili's restaurants. We believe this data incident was limited to between March – April 2018; however, we continue to assess the scope.

> Our records show that you may have visited a Chili's during this timeframe so we wanted to personally reach out to inform you of this incident to help you prevent any potential misuse of your payment card data. We sincerely apologize and are committed to doing what we can to help protect you and your data.

As a result of the Data Breach, Plaintiff has spent time and will continue to spend time monitoring his financial accounts for fraudulent activity.

13.     The Notice also informed Plaintiff that, in response to the Data Breach, Brinker is working with a third party service, ID Experts, to provide affected customers with 12 months of free MyIDCare credit monitoring. When Plaintiff attempted to sign up for the twelve months of free credit monitoring offered by Brinker, he found that, in order to complete the enrollment process, he was required provide his payment card details to ID Experts. This payment information was required so that, unless Plaintiff took affirmative steps to cancel this service after the initial 12 months of monitoring provided by Brinker expired, ID Experts could charge Plaintiff for continuing credit monitoring services.  Brinker failed to disclose this information in the Notice.

CLASS ACTION COMPLAINT

14.     Defendant Brinker International, Inc. is a Texas corporation with its headquarters and principal place of business located at 6820 LBJ Freeway, Dallas, TX 75240. Brinker may be served through its registered agent, Prentice Hall Corporation System, at 211 E. 7TH STREET SUITE 620, Austin, TX 78701.

15.     Brinker "owns, operates, or franchises more than 1,600 restaurants in 31 countries and two territories under the names Chili's® Grill & Bar ("Chili's") and Maggiano's Little Italy®." http://www.brinker.com/, last visited June 6, 2018. According to Brinker, all but 51 of its over 1,600 locations are Chili's Grill & Bar restaurants.[1]. California has the second largest number of Chili's restaurant locations in the United States.

16.     Brinker accepts debit and credit card payments from its customers at each of its restaurants.

## STATEMENT OF FACTS

17.     On May 12, 2018, Brinker announced that its payment system had been breached and that credit and/or debit card information from customers was compromised at certain Chili's restaurants.

18.     This data is being sold on the black market. Criminals use the data to make fraudulent charges to Brinker customers' accounts.

19.     There have been high profile data breaches of other restaurant chains, putting Brinker on notice of the need to be vigilant against and take steps to prevent data breaches.[2]

20.     Additionally, Plaintiff and the class members have suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft and misuse posed by their PII being placed in the hands of criminals who have already, or will imminently, misuse such information.

---

[1] See http://www.brinker.com/company/maggianos.html, (last visited June 6, 2018)
[2] See https://www.qsrmagazine.com/restaurant-software/7-ways-protect-against-data-breach, (last visited June 7, 2018).

CLASS ACTION COMPLAINT

21.   Plaintiff and the class members have a continuing interest in ensuring that their PII, which remains in the possession of Brinker, is protected and safeguarded from future breaches.

22.   At all relevant times, Brinker was well aware, or reasonably should have been aware, that the PII collected, maintained and stored on its payment system is highly sensitive, susceptible to attack, and could be used for wrongful purposes by third parties, such as identity theft and fraud.

23.   It is well known, and the subject of many media reports, that PII is highly coveted and a frequent target of hackers. Despite the frequent public announcements of data breaches of other restaurants – Jason's Deli, Wendy's, Chipotle, Sonic, etc. – Brinker continued to use an insufficient and inadequate system to protect the PII of Plaintiff and Class members.

24.   PII is a valuable commodity. A "cyber black market" exists in which criminals openly post stolen payment card numbers and other personal information on a number of underground Internet websites. PII is "as good as gold" to identity thieves because they can use victims' personal data to incur charges on existing accounts, or clone ATM, debit, or credit cards.

25.   Legitimate organizations and the criminal underground alike recognize the value in PII contained in a merchant's data systems; otherwise, they would not aggressively seek or pay for it. For example, in "one of 2013's largest breaches . . . not only did hackers compromise the [card holder data] of three million customers, they also took registration data [containing PII] from 38 million users."[3]

26.   At all relevant times, Brinker knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would

_____

[3]   Verizon   2014   PCI   Compliance   Report,   available   at: http://www.cisco.com/c/dam/en_us/solutions/industries/docs/retail/verizon_pci2014.pdf (hereafter "2014 Verizon Report"), at 54 (last visited June 6, 2018).

CLASS ACTION COMPLAINT

occur if its data security system was breached, including, specifically, the significant costs that would be imposed on individuals as a result of a breach.

27.    Brinker was, or should have been, fully aware of the significant number of people whose PII it collected, and thus, the significant number of individuals who would be harmed by a breach of its payment system.

28.    Unfortunately, and as alleged below, despite all of this publicly available knowledge of the continued compromises of PII in the hands of other third parties, Brinker 's approach to maintaining the privacy and security of the PII of Plaintiff and Class members was lackadaisical, cavalier, reckless, or at the very least, negligent.

29.    The ramifications of Brinker's failure to keep Plaintiff's and Class members' data secure are severe.

30.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[4] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[5]

31.    PII is a valuable commodity to identity thieves once the information has been compromised. As the FTC recognizes, once identity thieves have PII, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[6]

32.    On February 2, 2016, Javelin Strategy and Research reported that identity thieves have stolen $112 billion since 2010.[7] One year later, on February 1,

---

[4] 17 C.F.R § 248.201 (2013).

[5] Id.

[6] Federal Trade Commission, *Warning Signs of Identity Theft*, available at: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited April 10, 2017).

[7] *See* https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud- hits-inflection-point (last visited June 6, 2018).

2017, Javelin Strategy and Research reported that the overall incidence of identity fraud rose 16% in 2016 "to affect 6.15% of U.S. consumers, from 5.30% in 2015 — the highest on record."[8]

33.     According to Verizon's 2017 Payment Security Report, "of all the payment card data breaches the Verizon Threat Research Activity Center (VTRAC) team investigated over the past 12 years, not a single organization was fully [compliant with the Payment Card Industry Data Security Standard (the "PCI DSS")] at the time of the breach."[9] Further, this report found that "[o]verall, organizations experiencing a data breach were less likely to be compliant with 10 out of the 12 PCI DSS Key Requirements."[10]

34.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[11]

35.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result,

---

[8] See https://www.javelinstrategy.com/coverage-area/2017-identity-fraud, (last visited June 6, 2018).
[9] See http://www.verizonenterprise.com/resources/2017_payment_security_report_technical_report_en_xg.pdf, (last visited June 7, 2018)
[10] Id.
[11] Victims of Identity Theft, 2014 (Sept. 2015) available at: http://www.bjs.gov/content/pub/pdf/vit14.pdf (last visited April 10, 2017).

CLASS ACTION COMPLAINT

studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[12]

36.    Plaintiff and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

37.    The PII of Plaintiff and Class members is private and sensitive in nature and was left inadequately protected by Brinker.

38.    The Data Breach was a direct and proximate result of Brinker's failure to safeguard and protect Plaintiff's and Class members' PII properly from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Brinker's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of  Plaintiff's and Class members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

39.    Brinker had the resources to prevent a breach, but neglected to invest in data security timely and adequately, despite the growing number of well-publicized data breaches.

40.    On information and belief, had Brinker remedied the deficiencies in its data security systems, followed security guidelines, and adopted security measures recommended by experts in the field, Brinker would have prevented the Data Breach and, ultimately, the theft of its customers' PII.

41.    As a direct and proximate result of Brinker's wrongful actions and inactions and the resulting Data Breach, Plaintiff and Class members have been placed at an imminent, immediate, and continuing increased risk of fraud, requiring

---

[12]  GAO, Report to Congressional Requesters, at 29 (June 2007), available at http://www.gao.gov/new.items/d07737.pdf (last visited April 10, 2017).

CLASS ACTION COMPLAINT

them to take time they would have otherwise dedicated to other life demands, such as work, in an effort to mitigate the actual and potential impact of the Data Breach on their lives, including, inter alia, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, and filing police reports. This time has been lost forever and cannot be recaptured. In all manners of life in this country, time has constantly been recognized as compensable. For many consumers it is the way they are compensated, and even if they are retired from the work force, consumers should be free of having to deal with the consequences of a Data Breach, as is the case here.

42.    Brinker's wrongful actions and inactions directly and proximately caused the theft and dissemination into the public domain of Plaintiff's and Class members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    theft of their personal and financial information;

b.    unauthorized charges on their debit and credit card accounts;

c.    the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiff's and Class members' information on the black market;

d.    the improper disclosure of their PII;

e.    ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

f.    ascertainable losses in the form of the loss of cash back or other benefits as a result of their inability to use certain accounts and cards affected by the Data Breach;

g.    loss of use of and access to their account funds and costs associated with

CLASS ACTION COMPLAINT

the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse credit notations; and,

h.    the loss of productivity and value of their time spent in the attempt to ameliorate, mitigate and deal with the actual and future consequences of the Data Breach, including finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, suffering the imposition of withdrawal and purchase limits on compromised accounts, and the enduring the stress, nuisance and annoyance of dealing with all such issues resulting from the Data Breach.

43.    While the PII of Plaintiff and members of the Class has been stolen, Brinker continues to hold PII of consumers, including Plaintiff and Class members. Particularly because Brinker has demonstrated an inability to prevent a breach, Plaintiff and members of the Class have an undeniable interest in insuring that their PII is secure, remains secure, is properly and promptly destroyed and is not subject to further theft.

## CLASS ALLEGATIONS

44.    Plaintiff seeks relief on behalf of himself and as representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a nationwide class defined as follows:

> All persons residing in the United States whose personally identifiable information was exposed to unauthorized persons in the Data Breach announced by Brinker on May 12, 2018 (the "Nationwide Class").

45.    Pursuant to Fed. R. Civ. P. 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiff asserts claims for a statewide class, defined as follows:

CLASS ACTION COMPLAINT

All persons residing in California whose personally identifiable information was exposed to unauthorized persons in the Data Breach announced by Brinker on May 12, 2018 (the "California Class").

46.    Excluded from each of the above Classes are any of Brinker's officers, directors and board members; all persons who make a timely election to be excluded from the Class; and the judge to whom this case is assigned and his or her immediate staff and family.

47.    Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

48.    Each of the proposed Classes meets the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4).

49.    **Numerosity. Fed. R. Civ. P. 23(a)(1).** Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, the proposed Class includes several thousand individuals, located across the United States, whose PII was compromised in the Data Breach. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

50.    **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

a.    Whether Brinker had a duty to protect PII;

b.    Whether Brinker knew or should have known of the susceptibility of their data security systems to a data breach;

c.     Whether Brinker's security measures to protect their systems were reasonable in light of the measures recommended by data security experts;

d.     Whether Brinker was negligent in failing to implement reasonable and adequate security procedures and practices;

e.     Whether Brinker's failure to implement adequate data security measures allowed the Data Breach to occur;

f.     Whether Brinker's conduct constituted unfair or deceptive trade practices under state law;

g.     Whether Brinker's conduct, including their failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PII of Plaintiff and Class members;

h.     Whether Plaintiff and Class members were injured and suffered damages or other losses because of Brinker's failure to reasonably protect its website and data network; and,

i.     Whether Plaintiff and Class members are entitled to relief.

51.    **Typicality**. **Fed. R. Civ. P. 23(a)(3).** Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of those of other Class members. Plaintiff had his PII compromised in the Data Breach. Plaintiff's damages and injuries are akin to other Class members and Plaintiff seeks relief consistent with the relief of the Class.

52.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Brinker to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including privacy litigation. Plaintiff intends to prosecute this case vigorously and will fairly and adequately protect the Class' interests.

53. **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Fed. R. Civ. P23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual Plaintiffs may be insufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class are relatively small compared to the burden and expense required to litigate their individual claims against Brinker, and thus, individual litigation to redress Brinker's wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

54. **Injunctive and Declaratory Relief.** Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

55. Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

      a. Whether Brinker owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

      b. Whether Brinker's security measures were reasonable in light of data security recommendations, and other measures recommended by data security experts;

CLASS ACTION COMPLAINT

1     c.     Whether Brinker failed to comply with industry standards amounting to negligence;

d.     Whether Brinker failed to take commercially reasonable steps to safeguard the PII of Plaintiff and the Class members; and,

e.     Whether adherence to data security recommendations and measures recommended by data security experts would have reasonably prevented the Data Breach.

56.     Finally, all members of the proposed Classes are readily ascertainable. Brinker has access to information regarding the Data Breach, the time period of the Data Breach, and which individuals were potentially affected. Using this information, the members of the Class can be identified and their contact information ascertained for purposes of providing notice to the Class.

**COUNT I**
**NEGLIGENCE**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFF AND THE CALIFORNIA CLASS)**

57.     Plaintiff realleges, as if fully set forth, each and every allegation herein.

58.     Brinker owed numerous duties to Plaintiff and to members of the Nationwide Class, or, alternatively, members of the California Class (collectively, the "Class" as used in this Count). Brinker's duties included the following:

a.   to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;

b.   to protect their PII using reasonable and adequate security procedures and systems that are compliant with the PCI-DSS standards and consistent with industry-standard practices; and

c.   to implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

CLASS ACTION COMPLAINT

59.    Brinker solicited, gathered, and stored Plaintiff's and Class members'
PII to facilitate sales transactions.

60.    Brinker owed a duty of care not to subject Plaintiff, and Class members,
along with their PII to an unreasonable risk of harm because they were foreseeable
and probable victims of any inadequate security practices.

61.    Brinker knew, or should have known, of the risks inherent in collecting
and storing PII and the importance of adequate security. Brinker also knew, or should
have known, about numerous, well-publicized data breaches by other national
retailers.

62.    Brinker knew, or should have known, that its computer systems did not
adequately safeguard Plaintiff's and Class members PII.

63.    Because Brinker knew that a breach of its systems would damage
thousands of its customers, including Plaintiff and Class members, it had a duty to
adequately protect their PII.

64.    Brinker had a special relationship with Plaintiff and Class members.
Plaintiff's and Class members' willingness to entrust Brinker with their PII was
predicated on the understanding that Brinker would take adequate security
precautions. Moreover, only Brinker had the ability to protect its systems and the PII
of Plaintiff and Class members from attack.

65.    Brinker's own conduct also created a foreseeable risk of harm to
Plaintiff and Class members and their PII. Brinker's misconduct included failing to
implement adequate system and event monitoring, and failing implement the systems,
policies, and procedures necessary to prevent this type of data breach.

66.    Brinker breached the duties it owed to Plaintiff and Class members in
numerous ways, including:

        a.  by creating a foreseeable risk of harm through the misconduct
           previously described; and

b.  by failing to implement adequate security systems, protocols and practices sufficient to protect their PII both before and after learning of the data breach;

67.   But for Brinker's wrongful and negligent breach of the duties it owed Plaintiff and Class members, their personal and financial information either would not have been compromised or they would have been able to prevent some or all of their damages.

68.   The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Brinker's negligent conduct. Accordingly, Plaintiff and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**COUNT II**
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFF AND THE CALIFORNIA CLASS)**

69.   Plaintiff realleges, as if fully set forth, each and every allegation herein.

70.   When Plaintiff and the members of the Nationwide class or, alternatively, the members of the California Class (collectively, the "Class" as used in this Count), provided their PII to Brinker in making purchases from Brinker, they entered into implied contracts by which Brinker agreed to protect their PII and timely notify them in the event of a data breach.

71.   Brinker invited its customers, including Plaintiff and Class members, to purchase products from Brinker using credit or debit cards in order to increase sales by making purchases more convenient.

72.   An implicit part of the offer was that Brinker would safeguard the PII using reasonable or industry-standard means and would timely notify Plaintiff and the Class in the event of a data breach.

73.     Based on the implicit understanding, Plaintiff and the Class accepted the offers and provided Brinker with their PII by using their credit or debit cards in connection with purchases from Brinker during the period of the Brinker data breach.

74.     Plaintiff and Class members would not have provided their PII to Brinker had they known that Brinker would not safeguard their PII as promised or provide timely notice of a data breach.

75.     Plaintiff and Class members fully performed their obligations under the implied contracts with Brinker.

76.     Brinker breached the implied contracts by failing to safeguard Plaintiff's and Class members' PII and failing to provide them with timely and accurate notice when their PII was compromised in the data breach.

77.     The losses and damages Plaintiff and Class members sustained (as described above) were the direct and proximate result of Brinker's breaches of its implied contracts with them.

## COUNT III
## UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS, OR, ALTERNATIVELY, PLAINTIFF AND CALIFORNIA CLASS)

78.     Plaintiff realleges, as if fully set forth, each and every allegation herein.

79.     Plaintiff and members of the Nationwide class or, alternatively, the members of the California Class (collectively, the "Class" as used in this Count), conferred a monetary benefit on Brinker. Specifically, they purchased goods and services from Brinker at retail prices and provided Brinker with their PII by using their credit or debit cards for the purchases. In exchange, Plaintiff and Class members should have been compensated by Brinker with the goods and services that were the subject of the transaction and by having Brinker process and store their PII using adequate data security.

CLASS ACTION COMPLAINT

80.    Brinker knew that Plaintiff and the Class conferred a benefit on Brinker. Brinker profited from their purchases and used their PII for its own business purposes.

81.    Brinker failed to secure the Plaintiff's and Class members' PII, and, therefore, did not provide full compensation for the benefit the Plaintiff and Class members provided.

82.    Brinker acquired the PII through inequitable means because it failed to disclose the inadequate security practices previously alleged.

83.    Had Plaintiff and Class members known that Brinker would not secure their PII using adequate security, they would not have completed their purchases with Brinker.

84.    Plaintiff and the Class have no adequate remedy at law.

85.    Under the circumstances, it would be unjust for Brinker to be permitted to retain any of the benefits that Plaintiff and Class members conferred on it.

86.    Brinker should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiff and Class members proceeds that it unjustly received from them. In the alternative, Brinker should be compelled to refund the amounts that Plaintiff and the Class overpaid.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFF AND THE**
**NATIONWIDE CLASS, OR, ALTERNATIVELY,**
**PLAINTIFF AND THE CALIFORNIA CLASS)**

87.    Plaintiff realleges, as if fully set forth, each and every allegation herein.

88.    As previously alleged, Plaintiff and Class members entered into an implied contract that required Brinker to provide adequate security for the PII it collected from their payment card transactions. As previously alleged, Brinker owes duties of care to Plaintiff and Class members that require it to adequately secure PII.

89.    Brinker still possesses PII pertaining to Plaintiff and Class members.

CLASS ACTION COMPLAINT

90.    Brinker has made no announcement or notification that it has remedied the vulnerabilities in its computer data systems, and, most importantly, its systems.

91.    Accordingly, Brinker has not satisfied its contractual obligations and legal duties to Plaintiff and Class members. In fact, now that Brinker's lax approach towards data security has become public, the PII in its possession is more vulnerable than previously.

92.    Actual harm has arisen in the wake of the Brinker Data Breach regarding Brinker's contractual obligations and duties of care to provide data security measures to Plaintiff and Class members.

93.    Plaintiff, therefore, seeks a declaration that (a) Brinker's existing data security measures do not comply with its contractual obligations and duties of care, and (b) in order to comply with its contractual obligations and duties of care, Brinker must implement and maintain reasonable security measures, including, but not limited to:

a.    engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Brinker's systems on a periodic basis, and ordering Brinker to promptly correct any problems or issues detected by such third-party security auditors;

b.    engaging third-party security auditors and internal personnel to run automated security monitoring;

c.    auditing, testing, and training its security personnel regarding any new or modified procedures;

d.    segmenting PII by, among other things, creating firewalls and access controls so that if one area of Brinker is compromised, hackers cannot gain access to other portions of Brinker systems;

e.    purging, deleting, and destroying in a reasonable secure manner PII not necessary for its provisions of services;

CLASS ACTION COMPLAINT

f.     conducting regular database scanning and securing checks;

g.     routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.     educating its customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps Brinker customers must take to protect themselves.

## COUNT V
### VIOLATION OF THE CALIFORNIA CUSTOMER RECORDS ACT, CALIFORNIA CIVIL CODE § 1798.81.5 AND THE CALIFORNIA UNFAIR COMPETITION LAW'S UNLAWFUL PRONG (ON BEHALF OF PLAINTIFF AND THE CALIFORNIA CLASS)

94.     Plaintiff realleges, as if fully set forth, each and every allegation herein.

95.     "[T]o ensure that personal information about California residents is protected," the California Legislature enacted the Customer Records Act, California Civil Code §1798.81.5, which requires that any business that "owns or licenses personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

96.     As described above, Brinker failed to implement and maintain reasonable security procedures and practices to protect Plaintiff's and California Class members' personal information, and thereby violated California Civil Code section 1798.81.5.

97.     By violating section 1798.81.5 of the California Customer Records Act, Brinker is liable to Plaintiff and California Class members for damages under California Civil Code section 1798.84(b).

98.    Because Brinker "violates, proposes to violate, or has violated," the California Customer Records Act, Plaintiff is entitled to injunctive relief under California Civil Code section 1798.84(e).

99.    In addition, Brinker's violations of the Customer Records Act constitute unlawful acts or practices under California's Unfair Competition Law, California Business and Professions Code sections 17200, et seq., which provides for restitution damages, and grants the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

100.    Accordingly, Plaintiff requests that the court enter an injunction that requires Brinker to implement reasonable security procedures and practices, including, but not limited to: (1) ordering that Brinker engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Brinker's systems on a periodic basis, and ordering Brinker to promptly correct any problems or issues detected by such third-party security auditors; (2) ordering that Brinker engage third-party security auditors and internal personnel to run automated security monitoring; (3) ordering that Brinker audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Brinker segment customer data by, among other things, creating firewalls and access controls so that if one area of Brinker is compromised, intruders cannot gain access to other portions of Brinker's systems; (5) ordering that Brinker purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services; (6) ordering that Brinker conduct regular database scanning and securing checks; (7) ordering that Brinker routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and (8) ordering Brinker to meaningfully educate its customers about the threats they face as a result of the loss of their financial and

CLASS ACTION COMPLAINT

1  personal information to third parties, as well as the steps Brinker customers must take
2  to protect themselves.

3      101.   Plaintiff and members of the California Class seek all remedies available
4  under the California Customer Records Act and the California Unfair Competition
5  Law, including but not limited to, restitution, damages, equitable relief, including
6  injunctive relief, reasonable attorneys' fees and costs, and all other relief allowed
7  under the applicable laws.

8                              **REQUEST FOR RELIEF**

9      **WHEREFORE**, Plaintiff, individually and on behalf of all Class members
10  proposed in this Complaint, respectfully request that the Court enter judgment in
11  their favor and against Brinker as follows:

12      a.    For an Order certifying the Classes, as defined herein, and appointing
13            Plaintiff and his Counsel to represent the Nationwide Class, or in the
14            alternative the California Class;

15      b.    For equitable relief enjoining Brinker from engaging in the wrongful
16            conduct complained of herein pertaining to the misuse and/or disclosure
17            of  Plaintiff's and Class members' PII, and from refusing to issue
18            prompt, complete and accurate disclosures to Plaintiff and Class
19            members;

20      c.    For equitable relief compelling Brinker to use appropriate cyber security
21            methods and policies with respect to consumer data collection, storage
22            and protection and to disclose with specificity to class members the type
23            of PII compromised;

24      d.    For an award of damages, as allowed by law in an amount to be
25            determined;

26      e.    For an award of attorneys' fees costs and litigation expenses, as
27            allowable by law;

28

CLASS ACTION COMPLAINT

f.    For prejudgment interest on all amounts awarded;

g    For leave to amend these pleadings to conform to evidence produced at trial; and

h.    For such other and further relief as this court may deem just and proper.

## JURY TRIAL DEMANDED.

Plaintiff hereby demands a jury on all issues so triable.

Dated:  June 27, 2018                    Respectfully submitted,

**GREEN & NOBLIN, P.C.**

By:  _/s/ James Robert Noblin_____
     James R. Noblin
     4500 East Pacific Coast Highway
     Fourth Floor
     Long Beach, California 90804
     Telephone: (562) 391-2487
     Facsimile: (415) 477-6710
     Email: gnecf@classcounsel.com

     - and -

     William B. Federman
     **FEDERMAN & SHERWOOD**
     10205 N. Pennsylvania Ave.
     Oklahoma City, Oklahoma 73120
     Telephone:  (405) 235-1560
     Facsimile:  (405) 239-2112
     Email:  wbf@federmanlaw.com

     *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT